IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| SHEILA G. HENDERSON, as personal representative of the heirs-at-law and/or wrongful death beneficiaries of TONY R. HENDERSON,<br><br>  Plaintiff,<br><br>v.<br><br>MEADWESTVACO CORPORATION, et al.<br><br>  Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  CIVIL ACTION NO.<br>)  _____<br>)<br>)<br>)<br>) |

## NOTICE OF REMOVAL

Defendant MeadWestvaco Corporation (hereinafter "Mead") gives notice that this matter is hereby removed pursuant to 28 U.S.C. §§ 1441(b) and 1446 *et seq.* from the Circuit Court of St. Clair County, Alabama, to the United States District Court for the Northern District of Alabama. This action could have been filed in this Court pursuant to 28 U.S.C. § 1332, in that there is complete diversity of citizenship between the Plaintiff and the properly joined Defendants and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs. In support of this Notice of Removal, Mead shows unto the Court as follows:

### BACKGROUND FACTS

1.  This action was filed in the Circuit Court of St. Clair County, Alabama, as CV-06-122, on June 16, 2006, the same day that Plaintiff attempted to voluntarily dismiss an action against the same defendants based on the same underlying facts that had been fully litigated for over fifteen months in the State Court of Fulton County, Georgia.

2.  Plaintiff's decedent, Tony R. Henderson, worked at the Cement Asbestos Products Company ("CAPCO") plant in Ragland, Alabama, during the summers of 1971 and

1972. (*See* Evid. Submission, Tab A at ¶ 15.) Plaintiff alleges that the decedent was exposed to asbestos as a result of his work environment at CAPCO and that this exposure caused his death. (Complaint at ¶ 8.) The decedent last worked at CAPCO in August of 1972, almost thirty-four years before this action was filed. (*See* Evid. Submission, Tab A at ¶ 15; Tab D at p. 63.)

3. On March 17, 2005, prior to his death, Tony R. Henderson and Sheila Henderson filed an action for personal injuries in the State Court of Fulton County, Georgia, Case No. 05EV000013D (hereinafter "the Georgia Action"). (*See* Evid. Submission, Tab A.) The Defendants in this case were all named as defendants in the Georgia Action. *Id.*

4. On January 1, 2006, Mead filed a Motion for Summary Judgment in the Georgia Action asserting, among other things, that Plaintiff's claims were barred by Alabama's common law twenty-year Rule of Repose. (*See* Evid. Submission, Tab E.) The summary judgment motion was fully briefed and the court heard oral arguments on June 12, 2006. (*See* Evid. Submission at Tabs F – H, parties' briefs and transcript of hearing.)

5. On the afternoon of June 12, 2006, the Georgia court notified counsel for Mead by e-mail that: "After careful consideration, Judge Newkirk is going to grant your MSJ on the Rule of Repose. He would like to give you the option of either having us sign a general order granting your motion or if you'd like, you may submit a detailed order the Judge will consider." (*See* Evid. Submission, Tab K, Affidavit of John A. Smyth III at ¶ 4.)

6. Because Plaintiff Sheila Henderson's deposition was scheduled to be taken the very next day on June 13, 2006, counsel for Mead, in order to avoid subjecting Mrs. Henderson to a difficult and painful deposition, informed Plaintiff's counsel of the court's announced intention to grant Mead's motion for summary judgment and cancelled Mrs. Henderson's deposition. *Id.* at ¶¶ 5-6.

7.      In an apparent attempt to delay the Georgia court's entry of the summary judgment order, Plaintiff's counsel contacted the Georgia Court and requested the opportunity to submit a sur-reply brief before the Court entered its order. *Id.* at ¶ 7. However, three days later, on June 16, 2006, rather than filing a sur-reply brief, Plaintiff filed a voluntary dismissal without prejudice under O.C.G.A. § 9-11-41(a)(1)(A)[1] and, on the same day, filed the instant action in St. Clair County, Alabama.  (*See* Evid. Submission, Tab L, Plaintiff's Notice of Voluntary Dismissal.)

## DIVERSITY JURISDICTION

### A.      Amount in Controversy

8.      Although Plaintiff's Complaint does not seek a specific amount of damages, Plaintiff seeks punitive damages based upon a claim for wrongful death. A survey of recent Alabama case law demonstrates that verdicts in Alabama for wrongful death actions typically far exceed the jurisdictional amount of $75,000, exclusive of interests and costs. (*See* "List of Recent Wrongful Death Verdicts in Alabama", attached as Exhibit A.)  Accordingly, the jurisdictional amount for diversity jurisdiction is satisfied in this case.

9.      If any question arises as to the existence of the requisite amount in controversy, then Defendants request the opportunity to submit post-removal evidence in accordance with the procedure adopted by the Eleventh Circuit. *Sierminski v. Transouth Financial Corp.*, 216 F.3d 945, 949 (11th Cir. 2000).

---

[1] O.C.G.A. § 9-11-41(a)(1)(A) permits voluntary dismissal, without a joint stipulation or leave of court, "at any time before the first witness is sworn." However, there is a judicially created exception to this statutory provision that prohibits the dismissal after "there has already been an announcement by the court of its intention to rule in favor of the defendant." *Muhanna v. O'Kelley*, 185 Ga. App. 220, 221, 363 S.E.2d 626, 627 (1987). Mead currently has pending in the Georgia Action a Motion to Strike Plaintiff's Notice of Voluntary Dismissal and for Entry of an Order Granting Summary Judgment on Alabama's Rule of Repose based on this exception and the fact that "trial preservation" deposition testimony had already been taken in the Georgia action prior to the filing of the voluntary dismissal.

### B. Diversity of Citizenship

10. Upon information and belief, Plaintiff is a resident of Jefferson County, Alabama, and a citizen of the State of Alabama for purposes of diversity jurisdiction.

11. Defendant Mead is a Delaware corporation with its principal place of business in Connecticut. Pursuant to 28 U.S.C. § 1332(c)(1), Mead is a citizen of the States of Delaware and Connecticut.

12. Defendant CSX Transportation is a Virginia corporation with its principal place of business in Florida. Pursuant to 28 U.S.C. § 1332(c)(1), CSX Transportation is a citizen of the States of Virginia and Florida.

13. Although Defendant Bill Vann Company (formerly known as "Young & Vann Supply Company") is alleged to be a citizen of the State of Alabama, its joinder does not preclude diversity jurisdiction because it has been fraudulently joined in this action. A non-diverse defendant named in a state court action may be disregarded, and the action may be removed to federal court, when the joinder of the non-diverse defendant is fraudulent. *See Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998). A determination of fraudulent joinder is based on an analysis of the causes of action alleged in the complaint at the time of removal. *See Coker v. Amoco*, 709 F.2d 1433, 1440 (11th Cir. 1983). If there is no possibility that Plaintiff can establish a cause of action against the non-diverse defendant, then the non-diverse defendant has been fraudulently joined and his presence must be disregarded for jurisdictional purposes. *See Owens v. Life Ins. Co. of Ga.*, 289 F. Supp. 2d 1319, 1323-24 (M.D. Ala. 2003) (citing *Triggs*, 154 F.3d at 1287).

14. Bill Vann Company has been fraudulently joined and must be disregarded because there is no possibility that Plaintiff can establish a cause of action against it. *See Teddar*

*v. F.M.C. Corp.,* 590 F.2d 115, 117 (5th Cir. 1979) (courts shall disregard the citizenship of fraudulently joined defendants when determining if complete diversity exists).[2] Plaintiff cannot possibly establish a cause of action against Bill Vann Company for two independently sufficient reasons: (1) There is no factual basis for Plaintiff's claims against Bill Vann Company, and (2) there is no possibility of recovery against Bill Vann Company because Plaintiff's claims are barred by Alabama's common law Rule of Repose and the applicable statute of limitations.

### 1. Bill Vann Company Has Been Fraudulently Joined Because There Is No Factual Basis For A Claim Against it.

15. In the Complaint, Plaintiff alleges that "[e]ach Defendant" contaminated Tony Henderson's work environment with asbestos. (*See* Complaint at ¶¶ 8-9.) This broad allegation leaves this Court with little to no guidance as to the propriety of Plaintiff's claims against Bill Vann Company for the purposes of a fraudulent joinder analysis. However, because substantial discovery was conducted in the Georgia Action involving the identical facts and parties, a great deal more is known about the decedent's work history at the CAPCO plant than what is included in Plaintiff's Complaint.

16. The deposition testimony of Plaintiff's own witnesses taken in the Georgia Action show that Plaintiff cannot establish a cause of action against Bill Vann Company. Upon information and belief, Bill Vann Company's predecessor, Young & Vann Supply Company, was an industrial supply company that allegedly provided products and equipment to the CAPCO plant. The only possible way that Plaintiff could establish a cause of action against Bill Vann Company would be to establish that Tony Henderson was exposed to asbestos-containing products that were supplied to his work sites by Young & Vann. However, according to the

---

[2]The Eleventh Circuit has adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981. *See Bonner v. City of Prichard,* 661 F. 2d 1206, 1209 (11th Cir. 1981)(*en banc*).

depositions taken of Plaintiff's decedent and his co-workers in the Georgia action, Henderson was not exposed to any asbestos-containing products supplied by Young & Vann.[3]

17.     The deposition testimony of the decedent, the decedent's father who worked with him at the CAPCO plant, and of a second co-worker, Tandy Payne, represent all of the available product identification evidence relevant to this case. These deposition transcripts establish only that Henderson was exposed to bags of raw asbestos fiber that were received by rail car at the CAPCO plant and used in the manufacturing process and possibly to asbestos dust created from the manufacturing process at CAPCO. They do not provide any basis for asserting that Henderson was exposed to asbestos-containing products or equipment allegedly supplied by Young & Vann Supply Company.

18.     First, decedent's father, Tony Rudolph Henderson, testified that his son's employment at CAPCO was as a laborer, "unloading boxcars and sweeping, general stuff like that inside the plant." (*See* Evid. Submission, Tab B at p. 80.) The boxcars Tony Henderson unloaded contained bags of raw asbestos. *Id.* at pp. 80-82. Tony Rudolph Henderson's testimony continued:

> Q:  Other than the bags of asbestos, do you recall seeing your son ever working hands on with any products that may have contained asbestos at the CAPCO Plant?
>
> A:  Other than the bags?
>
> Q:  Yes, sir.
>
> A:  No.

---

[3] Even if the evidence were such that Plaintiff could show that the decedent worked with asbestos-containing products that were sold by Bill Vann Company, which she cannot, Alabama law would still prevent Plaintiff from recovering against a mere seller or distributor who did not contribute to the alleged defective condition of the products that it sold, had no knowledge of the defective condition, and had no opportunity greater than that of the consumer of the product to inspect it. *See Allen v. Delchamps, Inc.*, 624 So.2d 1065, 1068 (Ala. 1983); *Johnson v. Niagra Machine and Tool*, 555 So. 2d 88, 89 (Ala. 1989); *Atkins v. American Motors Corp.*, 335 So. 2d 134, 143 (Ala. 1976).

> Q: Do you recall seeing your son working around any types of products that may have contained asbestos at the CAPCO Plant, other than the bags of asbestos or the asbestos pipe?
>
> A: No.

*Id.* at p. 84. Tony Rudolph Henderson did not mention Young & Vann in his deposition and he did not identify any asbestos-containing products supplied by Young & Vann.

19. Next, Tandy Payne, was deposed in the Georgia action and identified by Plaintiff's counsel as a "co-worker witness on work history and exposure relevant to the exposures of [Tony R.] Henderson." (*See* Evid. Submission, Tab C at p. 12.) Tandy Payne testified that Henderson unloaded bags of raw asbestos from boxcars and did some sweeping of the finishing line. *Id.* at pp. 58-59. He also testified that Henderson cleaned dust out of a dust collector on the finishing line. *Id.* at pp. 62-63. When asked about other potential exposures to asbestos, Payne testified:

> Q: Other than the bags of white asbestos fibers and the dust that you described, did you see [Henderson] working hands on with any other types of products that may have contained asbestos?
>
> A: No.

*Id.* at p. 65. Further, Tandy Payne did not mention Young & Vann in his deposition and he did not identify any asbestos-containing products supplied by Young & Vann.

20. Finally, prior to his death, Henderson gave a deposition on July 13, 2005, that was specifically designated by his counsel to be a deposition regarding "employment and product ID." (*See* Evid. Submission, Tab D at p. 79.) Tony Henderson testified that during the summers of 1971 and 1972 he unloaded bags of raw asbestos from boxcars, swept the storage room where the bags were kept, and performed a few other tasks including stacking cement asbestos couplets manufactured at the CAPCO plant and, on one occasion, painting the office walls. *Id.* at pp. 70-

76. Henderson also testified that, prior to his summer employment in 1971 and 1972, he worked for CAPCO part-time in high school, cleaning wooden pallets at his home for recycled use by CAPCO. *Id.* at pp. 47-52. In his lengthy testimony regarding his employment and the products he was allegedly exposed to during his employment, he did not mention Young & Vann and did not identify any asbestos-containing products supplied by Young & Vann. In fact, Henderson testified that he didn't know if Young & Vann Supply Company sold any products to CAPCO. In response to questions from Bill Vann Company's counsel in the Georgia Action, Mr. Henderson testified:

> Q: Are you familiar with the name Young & Vann Supply Company?
>
> A: Uh-huh.
>
> Q: How are you familiar with that name?
>
> A: Through our lawsuit.
>
> Q: Do you have any specific knowledge as to whether or not Young & Vann Supply Company sold any products out at CAPCO or to CAPCO?
>
> A: No. Don't know that they did or they didn't. I just don't have any recollection.

*Id.* at p. 96.

21. These deposition transcripts are all in agreement that Henderson was exposed to raw asbestos fiber used in the manufacturing process to make cement asbestos pipe, but not to asbestos-containing products or equipment supplied by Young & Vann. Considering this evidence that Henderson was not exposed to asbestos-containing products supplied by Bill Vann Company's predecessor, it is apparent that Plaintiff has no reasonable possibility of establishing a cause of action against Bill Vann Company.

2. **Bill Vann Company Has Been Fraudulently Joined Because Plaintiff's Claims Against Bill Vann Company Are Time Barred.**

22.     Additionally, Plaintiff has no possibility of recovery against Bill Vann Company under Alabama's wrongful death statute because the decedent's underlying personal injury claim was time-barred prior to Henderson's death. *See* Ala. Code § 6-5-410(a) (permitting a wrongful death action to be brought only if "the testator or intestate could have commenced an action for such wrongful act, omission or negligence if it had not caused death"). The Alabama Supreme Court has consistently held that there is no cause of action created by the death of an injured party if, at the time of death, the injured party was not able to maintain a suit for personal injury because his claim was time barred. *See Okeke v. Craig*, 782 So.2d 281, 283 (Ala. 2000); *Curtis v. Quality Floors, Inc.*, 653 So.2d 963, 964 (Ala. 1995); *Northington v. Carey-Canada, Inc.*, 432 So.2d 1231, 1232 (Ala. 1983); *Ellis v. Black Diamond Coal Mining Co.*, 268 Ala. 576, 578, 109 So.2d 699 (1959); *Woodward Iron Co. v Craig*, 256 Ala. 37, 45, 53 So.2d 586 (1951). In the present case, Henderson's underlying personal injury claim was time barred both by Alabama's common law twenty year Rule of Repose and by Alabama's pre-1979 statute of limitations for asbestos exposure claims.

23.     First, Alabama's common law Rule of Repose acts as an absolute bar to claims that are not commenced within twenty years. "Application of the rule of repose has only one element – the passage of twenty years from the moment that the actions giving rise to the claim occurred – and, if that time has elapsed, no claim can be pursued." *Moore v. Linery Nat'l Insurance Co.*, 108 F. Supp. 2d 1266, 1275 (citing *Tierce v. Ellis*, 624 So.2d 553, 554 (Ala. 1993)); *see also Spain v. Brown & Williamson Tobacco Corp.*, 230 F. 3d 1300, 1307 (11th Cir. 2000) ("The rule of repose operates as an absolute bar to claims that are not commenced within

twenty years from the time they could have been.") (citations omitted).

24. Moreover, a one-year statute of limitations, running from the date of last exposure, applies to all claims for alleged injury from asbestos exposure occurring prior to May 19, 1979. *See Garrett v. Raytheon Co.*, 368 So.2d 516, 520 (Ala. 1979); *Tyson v. Johns-Manville Sales Corp.*, 399 So.2d 263 (Ala. 1981); *Cazalas v. Johns-Manville Sales Corp.*, 435 So.2d 55, 57 (Ala. 1983).

25. The undisputed evidence establishes that the decedent last worked at the CAPCO plant in August of 1972, almost thirty-four years before this action was filed. Thus, the decedent's underlying personal injury claim against Bill Vann Company was barred by the applicable statute of limitation in August of 1973 and by the common law Rule of Repose in August of 1992. (For a more complete discussion of the Rule of Repose defense and Alabama's statute of limitations applicable to pre-1979 asbestos exposure claims, please see the parties' briefs and hearing transcript from the summary judgment motion in the Georgia Action, Evid. Submission, Tabs E- H.)

26. United States District Courts in Alabama have "consistently held that if the only claims against a resident defendant are barred by the statute of limitations, then there 'is no possibility the plaintiff can establish a cause of action against the resident defendant.' In such a situation, the resident defendant is deemed to be fraudulently joined." *Owens v. Life Ins. Co. of Ga.*, 289 F. Supp. 2d 1319, 1325 (M.D. Ala. 2003) (citing *Bullock v. United Benefit Ins. Co.*, 165 F. Supp. 2d 1255, 1258 (M.D. Ala. 2001). *See also Whitlock v. Jackson National Life Insurance Company*, 32 F. Supp. 2d 1286, 1290 (M.D. Ala. 1998); *Levett v. Independent Life and Accident Insurance Company*, 814 F.Supp 1053, 1058 (M.D. Ala. 1993) (denying motion to remand and holding that the non-diverse defendant was fraudulently joined because the fraud claims against

him were barred by the statute of limitations); *Wakeland v. Brown & Williamson Tobacco Corp.*, 996 F. Supp. 1213, 1222 (S.D. Ala. 1998) (holding that "[b]ecause any claim of suppression against the . . . defendants would be barred by the applicable statute of limitations, there is no possibility that plaintiffs could prevail on the claim" and the defendants were fraudulently joined); *Lyons v. The American Tobacco Co.*, 1997 WL 809677 at *5 (S.D. Ala. 1997) (denying motion to remand and ruling that the non-diverse defendants had been fraudulently joined in part because plaintiffs' fraud and common law claims "are barred by the applicable two year statute of limitations").

27. Thus, because the undisputed evidence establishes that there is no possibility that Plaintiff can maintain a cause of action against Bill Vann Company, Bill Vann Company's inclusion as a defendant in this action should be ignored and the citizenship of Bill Vann Company should not be considered for purposes of determining this Court's diversity jurisdiction. *See Owens v. Life Ins. Co. of Ga.*, 289 F. Supp. 2d 1319, 1323-24 (M.D. Ala. 2003) (citing *Triggs*, 154 F.3d at 1287).

## ALL OTHER REMOVAL PREREQUISITES HAVE BEEN SATISFIED

28. Mead was served with the Summons and Complaint in this action by process server on June 16, 2006. This Notice of Removal is timely because it is filed within thirty days of service. A true and correct copy of all process, pleadings, and orders served upon Mead is attached hereto as Exhibit B, as is required by 28 U.S.C. § 1446 (a).

29. All properly joined and served Defendants join in and consent to this removal. Fraudulently joined parties need not join in a Notice of Removal. *See, e.g., Alexander v. Goldome Credit Corp.*, 772 F. Supp. 1217, 1222 n.11 (M.D. Ala. 1991) *overruled on other grounds as recognized in Reneau v. Oakwood Mobile Homes*, 952 F.Supp. 724 (N.D.Ala. Jan 28,

1997) (nominal or improperly joined defendants need not join in removal); *Siderits v. Indiana*, 830 F. Supp. 1156, 1160 (N.D. Ind. 1993); *Moore v. Interstate Fire Ins. Co.*, 717 F. Supp. 1193, 1195 (S.D. Miss. 1989).

30. Defendants have sought no similar relief with respect to this matter.

31. Venue is proper in this district under 28 U.S.C. § 1446(a), because this district and division embraces the place in which the removed action has been pending and because a substantial part of the events giving rise to Plaintiff's claims allegedly occurred in this district.

32. The prerequisites for removal under 28 U.S.C. § 1441 have been met.

33. Written notice of the filing of this Notice of Removal will be given to the adverse party as required by law.

34. A Notice of Filing Notice of Removal, with a copy of this Notice of Removal attached, will promptly be filed with the Clerk for the Circuit Court of St. Clair County, Alabama.

35. The allegations of this Notice of Removal are true and correct, this cause is within the jurisdiction of the United States District Court for the Northern District of Alabama, and this cause is removable to the United States District Court for the Northern District of Alabama.

36. If any question arises as to the propriety of the removal of this action, Defendants request the opportunity to present a brief and oral argument in support of its position that this case is removable.

WHEREFORE, MeadWestvaco Corporation, desiring to remove this case to the United States District Court for the Northern District of Alabama, Central Division, being the district and division of said Court for the County in which said action is pending, prays that the filing of this Notice of Removal shall effect the removal of said suit to this Court.

Respectfully submitted,

_____
H. Thomas Wells Jr.
John A. Smyth III
C. Andrew Kitchen
Attorneys for Defendant
    MeadWestvaco Corporation

**OF COUNSEL:**
MAYNARD, COOPER & GALE, P.C.
1901 Sixth Avenue North
2400 AmSouth/Harbert Plaza
Birmingham, Alabama 35203-2602
(205) 254-1000

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing Notice of Removal has been served upon the following listed persons by placing a copy of the same in the United States mail, first-class postage prepaid and properly addressed as follows:

Charles E. Robinson, Jr.
Renay Bertella
The Robinson Law Firm, PC
PO Box 370
Ashville, AL 35953

John E. Guerry, III
Motley Rice, LLC
28 Bridgeside Boulevard
Mt. Pleasant, SC 29464

Kevin D. Graham
Jackson, Foster & Graham, LLC
PO Box 2225
Mobile, AL 36652

Martin K. Berks
Environmental Attorneys Group, PC
1124 20th Street South, Suite 101
Birmingham, Alabama 35205

F. Grey Redditt, Jr
Timothy Allen Clarke
Vickers Riis Murray & Curran LLC
PO Drawer 2568
Mobile, AL 36652-2568

Todd M. Higey
Adams & Reese/Lange Simpson LLP
2100 3rd Avenue North, Suite 1100
Birmingham, AL 35203-3367

on this the 14th day of July, 2006.

_____
OF COUNSEL